OPINION
{¶ 1} Defendant-appellant Gerald Bowerman appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of trafficking in marijuana. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 9, 2003, the Stark County Grand Jury indicted appellant on one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2)(C)(3)(f), a felony of the second degree. At his arraignment on October 10, 2003, appellant entered a plea of not guilty to the charge contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on September 8, 2004. The following evidence was adduced at trial.
 {¶ 4} From September 6 through September 8, 2003, the F.B.I. Drug Task Force for Stark County received information from an FBI agent that large quantities of marijuana were being delivered to Stark County for distribution by two or three males in a large white panel van or truck or a U-haul truck. According to the FBI agent, the suspects, who came from Las Vegas, would stay at the Belden Village Motel 6 and would come to Stark County every seven to ten days. The FBI agent advised the Task Force to ask local motels to notify The Task Force of any suspicious activities. The Task Force agreed and provided the following indicators of suspicious activity to the motels and hotels in the area: people coming from certain states (Texas, Nevada, California, and Arizona) and paying cash on a day-to-day basis, no requests for room service or housekeeping, and a lot of in-coming and out-going telephone calls. The motel and hotel personnel agreed to cooperate.
 {¶ 5} On September 8, 2003, the clerk from the Belden Village Motel 6 called the Task Force and stated that a white male had checked into room 220 and paid cash for the room, that the male was driving a white Buick automobile with rental Colorado license plates and that the male indicated that he was from Las Vegas.
 {¶ 6} Detectives Henderhan and Elliott, as well as other members of the Task Force, arrived at the Motel 6 and set up surveillance. The detectives observed a man, later identified as appellant, leaving in the white Buick but the officers lost him in heavy traffic. Later, the white Buick returned to the motel.
 {¶ 7} On Wednesday, September 10, the same clerk again contacted the Task Force and stated that a white recreational vehicle (RV) with California license plates was at room 220 of the Motel 6. According to the clerk, a male in his 50's was going into the room. Detectives Henderhan and Elliott again responded to the area and conducted surveillance of the room. The detectives observed two males and a female leave the motel in the white Buick. They later returned and parked near the RV. The woman exited the car and went back into room 220, looking around as she went. The car then backed up to the rear of the RV. Appellant was observed carrying very large and heavy looking duffel bags from the bottom locked storage area of the RV and placing the duffel bags in the trunk of the Buick. Both appellant and the other man appeared to be nervous. After transferring the bags, the two men got into the white Buick and drove away.
 {¶ 8} Detectives Henderhan and Elliott followed the Buick in separate vehicles. After the Buick was stopped on Lake O'Springs Avenue, the detectives approached the vehicle. When Detective Henderhan went over to the passenger side to talk to appellant, appellant rolled down the passenger window. Detective Henderhan testified that "there was an overwhelming smell of marijuana." Transcript, Volume I at 249. Detective Elliott, who approached the driver's side to talk to William Hammond, appellant's co-defendant, also immediately smelled marijuana. After a drug dog alerted to the presence of drugs inside the Buick, the Buick was seized and searched and both appellant and Hammond were taken to the Jackson Township Police Department to be interviewed. A search revealed that the duffle bags contained marijuana.
 {¶ 9} Detective Henderhan testified that she had the chance to be in the same room with appellant while he was speaking to other individuals at the Jackson Police Department and that she heard him say "that he has met the recipient of who was going to receive the marijuana delivery once to two times before and has received $10,000 payment for doing so, and that they met in a cemetery." Transcript, Volume I at 267. At trial, Detective Elliott also testified that she overheard appellant admit to delivering marijuana in the Canton area before.
 {¶ 10} The following testimony was adduced when Harry Tideswell, IV, a special agent with the Drug Enforcement Administration, was asked what appellant told him at the Jackson Township Police Department:
 {¶ 11} "A. He tells me that this was his second trip to the State of Ohio for the purposes of delivering bulk amounts of marijuana.
 {¶ 12} "Q. That's what he told you?
 {¶ 13} "A. Yes.
 {¶ 14} "Q. Okay.
 {¶ 15} "A. The first trip occurred in approximately the February of 2003 time frame. He estimated that that delivery encompassed approximately 200 pounds of marijuana. Also at that time he told me that he was paid approximately $5,000 for that delivery.
 {¶ 16} "In an attempt to gather all the relative facts for the potential delivery on that particular evening, it's imperative that law enforcement, you know, identify who the intended recipient is of the — in this case the 413 pounds of marijuana.
 {¶ 17} "Mr. Bowerman had told us a scenario in that in his first delivery he went to a gas station where he sat for two hours and then was approached by a later 30's male with a beard and glasses and instructed to drive to a cemetery for the purpose of off-loading that 200 pound load of marijuana.
 {¶ 18} "Mr. Bowerman further stated that when the individual in — with the beard and the glasses, who was driving a pickup truck, arrived at the cemetery, he instructed Mr. Bowerman to look away, off-loaded the approximate 200 pounds of marijuana into his vehicle, and then threw approximately $5,000 in the trunk. And that's the information that he had provided relative to that particular delivery.
 {¶ 19} "Q. What information did he provide to you about what was happening on September 10th, 2003?
 {¶ 20} "A. That he was en route to a gas station, and he had assumed that the delivery procedure would be the same.
 {¶ 21} "Q. Did he tell you anything about how he knew to come to Canton or why he came to Canton or what the information was on the marijuana?
 {¶ 22} "A. He had stated that he had received a call earlier, approximately a week or so earlier, and instructed to come to Canton." Transcript, Volume II at 412-414.
 {¶ 23} During a search of the RV, which was owned by Hammond, the police found a brick of marijuana and, during a search of the Motel 6 room, the police found a duffle bag in the name of William Andress containing a bag of marijuana. William Andress is the name appellant used to rent the room. The police also found another bag of marijuana and plastic bags in the room as well as a Foodsaver, which is used to vacuum seal plastic bags.
 {¶ 24} At the conclusion of the evidence and the end of deliberations, the jury, on September 9, 2004, found appellant guilty of trafficking in marijuana. As memorialized in a Judgment Entry filed on September 16, 2004, appellant was sentenced to eight years in prison.
 {¶ 25} Appellant now raises the following assignments of error on appeal:
 {¶ 26} "I. THE TRIAL COURT ERRED IN EXCLUDING A STATEMENT OF A CO-DEFENDANT THEREBY DENYING APPELLANT A FAIR TRIAL.
 {¶ 27} "II. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO TELL THE JURY THAT APPELLANT DID NOT HAVE TO KNOW THE AMOUNT OF MARIJUANA INVOLVED AND FURTHER EXASPERATED [SIC] THE ERROR BY VOUCHING FOR THE STATE'S ARGUMENT."
 I {¶ 28} Appellant, in his first assignment of error, argues that the trial court erred in excluding a statement made by William Hammond, appellant's co-defendant, and, in doing so, denied appellant a fair trial. We disagree.
 {¶ 29} In the case sub judice, appellee moved to exclude a statement made by William Hammond to police after Hammond and appellant had been pulled over. Hammond, in response to a police officer's rhetorical question as to the amount of marijuana in the vehicle, indicated that the amount was 400 pounds. While appellant argued that such statement was admissible under Evid.R. 804(B)(3) as a statement against interest and was admissible to show appellant's "lack of knowledge or the fact that the co-Defendant was, in fact, the main and only participant" (Transcript, Volume I at 14), the trial court granted appellee's motion over appellant's objection.
 {¶ 30} As an initial matter, we note that the parties do not dispute that Hammond was unavailable as a witness.
 {¶ 31} Whether or not Hammond's statement was admissible was initially raised pursuant to a motion in limine filed by the State. The grant or denial of a motion in limine does not preserve any error for review. State v. Hill (1996),75 Ohio St.3d 195, 202-203, 661 N.E.2d 1068. In order to preserve the error, the evidence must be presented at trial, and a proper objection lodged. State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, at paragraph three of the syllabus; State v. Grubb
(1986), 28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. An appellate court will then review the correctness of the trial court's ruling on the objection rather than the in limine ruling. See Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08, 1994 WL 64293; State v. Hapney, Washington App. Nos. 01CA30, 01CA31, 2002-Ohio-3250, at paragraph 55.
 {¶ 32} In the case sub judice, appellant did not make a proffer of the evidence of the statement Hammond made to police regarding the amount of marijuana during the trial itself.[1] Thus, this issue was not preserved for appeal.
 {¶ 33} Furthermore, even assuming, arguendo, that such issue was preserved for appeal, we find that the exclusion of Hammond's statement was not prejudicial. Hammond's statement to the police as to the amount of marijuana in the vehicle does not exonerate appellant or impact on the issue of appellant's guilt. Rather, as noted by appellee, such statement goes to Hammond's knowledge about the amount of marijuana, not as to whether or notappellant had knowledge as to the contents of the duffle bags. Finally, there is overwhelming evidence of appellant's guilt. As is set forth in detail above, appellant was observed loading heavy duffle bags into his car and admitted to having transported marijuana to Stark County before. Moreover, when the officers stopped appellant and Hammond, the officers both immediately smelled marijuana.
 {¶ 34} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 35} Appellant, in his second assignment of error, contends that the trial court erred in allowing the prosecutor, during closing arguments, to tell the jury that appellant did not have to know the amount of marijuana involved. Appellant further contends that the trial court further exacerbated such error by vouching for the State's argument. We disagree.
 {¶ 36} In the case sub judice, after, during closing arguments, the prosecutor stated to the jury that "Mr. Bowerman doesn't have to know the amount [of marijuana]", appellant objected and the trial court sustained appellant's objection. A bench conference was then held outside the hearing of the jury. Following such conference, the trial court stated to the jury as follows:
 {¶ 37} "THE COURT: Ladies and gentlemen, the statement which was made by Mr. Wise was, quote, Mr. Bowerman does not have to know the amount, end quote. And that — and then at that point Mr. LoDico objected and said, Of course he does. I said, The objection is sustained. When I said that, I was thinking about what Mr. LoDico was saying. The objection is overruled. Mr. Wise's statement is overruled. Mr. Wise's statement was, quote, Mr. Bowerman doesn't have to know the amount. When Mr. LoDico objected again I was thinking, there were a number of things that were going on, and Mr. LoDico's objection is overruled." Transcript, Volume II at 615-616. Appellant then moved for a mistrial, arguing as follows:
 {¶ 38} "MR. LoDICO: I would make a motion for immediate mistrial with prejudice. You have basically sided with the State of Ohio. You told them what I said is wrong. The law should be given by the Judge and the Judge alone, not the Prosecutor. I objected, you chose sides. You basically stood behind him. I think that's improper. I don't know how that's going to affect the jury. I'm going to ask for a mistrial." Transcript, Volume II at 616-617. The trial court denied appellant's motion for a mistrial.
 {¶ 39} Appellant, in the case sub judice, was indicted on one count of trafficking in marijuana in violation of R.C.2925.03(A)(2)(C)(3)(f). Revised Code 2925.03(A)(2) states, in relevant part, as follows: "(A) No person shall knowingly do any of the following: . . . (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 40} "Knowledge of the bulk amount of a controlled substance is not an element of an offense under R.C. 2925.03(A)."State v. Darby (Mar. 24, 1995,) Portage App. No. 93-P-0117, 1995 WL 237069 at p. 1. In State v. Pulizzi (Jan. 15, 1997), Summit App. No. 17797, 1997 WL 22596, the appellant was charged with violating R.C. 2925.03(A)(4) and (A)(6). In order to be found guilty of violating either section, the State was required to prove that the appellant "knowingly. . . . possess[ed] a controlled substance in an amount equal to or exceeding" either the bulk amount or three times the bulk amount. While the appellant in Pulizzi argued that the State was required to prove that he knowingly possessed the specific amount of marijuana, the appellate court rejected such agreement. As noted by the court in Pulizzi, "[k]nowing is an adverb which modifies only the verb "possess." * * * [T]he state need not prove that defendant knows the amount of the controlled substance he possesses equals or exceeds three times the bulk amount. The clause "in an amount equal to or exceeding three times the bulk amount" is not modified by knowingly." Id at p. 4, citing Statev. Laudato (Mar. 28, 1991), Cuyahoga App. No. 58211, 1991 WL 41718. See also State v. Hendrickson (Sept. 3, 1986), Montgomery App. No. 9253, 1986 WL 9672.
 {¶ 41} Likewise, the word "knowingly" in R.C. 2925.03(A)(2) modifies the verbs prepare, ship, transport, deliver and distribute. Thus, the prosecutor correctly stated the law and the trial court correctly overruled appellant's objection to the prosecutor's statement. Moreover, we concur with appellee that the trial court, by correctly ruling on appellant's objection, did not vouch for the prosecution. We concur with appellee that the trial court's ruling on appellant's objection and giving a curative instruction to the jury informing the jury that its initial ruling sustaining appellant's objection was not how it intended to rule does not equate to the trial court siding with the prosecution.
 {¶ 42} Appellant's second assignment of error is, therefore, overruled.
 {¶ 43} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Boggins, P.J. and Hoffman, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] At the oral hearing in this matter, defense counsel conceded that he did not proffer such evidence during trial.