DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction and sentence entered by the Wood County Court of Common Pleas after defendant-appellant Ashley Kruse was found guilty of three counts of trafficking in cocaine, all first degree felonies. Appellant now challenges that judgment through the following assignments of error:
 {¶ 2} "Assignment of Error I
 {¶ 3} "The trial court's verdicts of guilty as to counts two and three of the indictment are based upon insufficient evidence, as the prosecution failed to establish venue as to either offense.
 {¶ 4} "Assignment of Error II
 {¶ 5} "The trial court erred to the prejudice of appellant by finding him guilty of aiding and abetting first degree felony trafficking offenses as to counts two and three of the indictment, as the evidence did not establish that appellant had actual knowledge of the quantities of drug sold nor the location of the sales.
 {¶ 6} "Assignment of Error III
 {¶ 7} "The trial court erred to the prejudice of appellant by failing to empanel a jury for sentencing, and further by sentencing appellant to consecutive terms of imprisonment based upon judicial fact-finding by upon a preponderance of the evidence standard, all in violation of appellant's rights to trial by jury as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution.
 {¶ 8} "Assignment of Error IV
 {¶ 9} "The trial court erred to the prejudice of appellant and abused its discretion by imposing mandatory fines as part of his sentences for trafficking cocaine, as appellant timely filed an affidavit of indigency and the court did not conduct any inquiry into the issue of appellant's indigency; moreover, appellant was given a cumulative sentence of nine years of actual incarceration, which prevents him from paying the imposed fines."
 {¶ 10} On May 6, 2004, appellant was indicted and charged with three counts of trafficking in cocaine, all in violation of R.C. 2925.03(A)(1) and (C)(4)(e) and all with the specification that the offense was committed in the vicinity of a school. In addition, appellant was charged with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32. The indictment was the result of an investigation into drug trafficking in Wood County by members of the Drug Enforcement Task Force and the Ohio Attorney General's Office in February and March 2004. As a result of that investigation, several members of a drug trafficking enterprise were arrested. As a result of these arrests, officers learned that appellant, who then lived in Galena, Delaware County, Ohio, supplied the Wood County traffickers with cocaine and charged him as stated. Appellant pled not guilty to the charges, and on October 20, 2004, the case proceeded to a trial to the bench after appellant waived his right to a jury trial. At the trial, the following evidence was presented.
 {¶ 11} Benjamin Snyder and appellant have known each other since high school. In November 2003, Snyder was working as a car salesman for his father in Napoleon, Henry County, Ohio, when he sold appellant a blue 1997 Buick Regal. Appellant paid for the car in cash, which piqued Snyder's interest. Snyder knew the cash came from drug activity. He and appellant then discussed setting up a procedure whereby appellant would supply Snyder with cocaine that Snyder would then distribute in Northwest Ohio. Snyder testified that the drugs would be brought to him and he would send the money back down to appellant in Galena via a driver, who he identified as Mark Behnfeldt.
 {¶ 12} Subsequently, Snyder was approached by Cody Warren, who wanted to buy four ounces of cocaine. Snyder then contacted appellant to arrange for delivery. Although appellant and Snyder had originally decided to use Behnfeldt as a courier, appellant's grandfather, who lived in Napoleon, had just died. Because he was traveling to Northwest Ohio for the funeral, on February 25, 2004, appellant met up with Snyder in Bowling Green to deliver the cocaine himself. The two met at 315 ½ East Wooster Street, a home shared by Kory Storch, Tyson Boulton and Brooks Pedroza, whom Snyder and appellant had known since high school. The East Wooster Street home is approximately 270 feet from an elementary and junior high school. Photographs admitted into evidence at the trial below reveal that the school is in plain sight of the home. After appellant delivered the cocaine to Snyder, Snyder called Warren to arrange the sale. Warren in turn was arranging the sale on behalf of two individuals who, unbeknownst to him were a confidential informant ("CI") and Mark Apple, an undercover agent with the Ohio Attorney General's Office. Subsequently, Warren, Apple and the CI drove to the East Wooster Street address, Warren entered the home, returned to the car with approximately four ounces of cocaine, retrieved $3,300 from Apple, and took that money back into the home. Apple and the CI then left. Inside the residence, Snyder took a portion of the money for himself and gave the remainder to appellant. These events occurred between 7:00 and 8:00 in the evening.
 {¶ 13} Subsequently, Warren contacted Snyder and indicated that he wanted to buy eight ounces of cocaine. Snyder then contacted appellant and ordered 8 ounces of cocaine "for my guy here in Bowling Green." Behnfeldt then drove to appellant's home in Galena to pick up the drugs. On March 18, 2004, Snyder met Warren, again at the East Wooster Street address, to complete the sale. Warren took the cocaine to his buyers, again Agent Apple and the CI, who were parked in a car nearby. Apple then gave Warren $6,500, which Warren took back into the residence. Snyder then called appellant to confirm that the sale had been completed and that Behnfeldt would be bringing appellant's share of the proceeds to Galena.
 {¶ 14} Shortly thereafter, Warren contacted Snyder and asked if he could buy 16 ounces of cocaine. Again, this was initiated when Agent Apple, working undercover, sought to purchase that amount. Snyder then contacted appellant and ordered the 16 ounces for Warren as well as two additional ounces for a customer. Appellant stated that it would not be a problem. During the week of March 24, 2004, Behnfeldt was not available to drive to Galena, so Snyder asked Tyson Boulton if he could drive to appellant's home in Galena to pick up 18 ounces of cocaine. Snyder offered to pay Boulton $200 and Boulton agreed to make the trip. On March 24, Boulton and Jared Rathge drove to Galena to pick up the cocaine. When Boulton arrived, appellant told him that what he wanted was in a Zinger's box and that it was to go to Ben Snyder. Boulton picked up the box and drove it back to the East Wooster Street home in Bowling Green. Boulton testified that he never looked in the box and that when he returned home, Snyder took the box "upstairs like he always does." Snyder then measured the cocaine and stored it in a microwave oven in Kory Storch's bedroom closet.
 {¶ 15} On March 30, 2004, Snyder traveled to the East Wooster Street residence in Bowling Green to complete the sale of 16 ounces of cocaine to Warren. Warren then contacted Apple and told him to park in a nearby parking lot. Warren brought Apple the 16 ounces of cocaine in exchange for $12,560. Warren took the money into the residence and returned shortly thereafter to Apple's car. Warren then asked Apple for a ride home. While Apple was driving Warren back home, they were stopped by officers of the Bowling Green Police Department. Simultaneously, officers raided the East Wooster Street residence and arrested Snyder and the other occupants. After that raid, Snyder agreed to cooperate with the police. Snyder then telephoned appellant to inform him that the sale had gone through. Officers tape recorded that conversation. During that conversation, appellant noted that he had been waiting for Snyder to call. Snyder confirmed that the sale had been completed and that he had appellant's share of the proceeds. Snyder then told appellant that the same buyer wanted to purchase 32 ounces of cocaine. Appellant responded that he would call Snyder back the next day with a price. Appellant also stated that he had "pressed" all of the cocaine himself.
 {¶ 16} On April 26, 2004, officers from the Delaware County Sheriff's Office were conducting surveillance of appellant's home in Galena, Ohio, when they observed appellant load several bags of trash into the back of a four-door maroon Honda and drive to the end of the driveway at a horse farm where appellant apparently lived and worked. Officers then saw appellant put the trash into a commercial dumpster. After appellant left the area, officers pulled the trash and searched the contents of the trash bags. The officers found ledgers, an envelope containing appellant's name and address, and an empty box for a I-500 Compact Professional Digital Scale. The officers subsequently obtained a search warrant for appellant's residence. Initially, upon apprehending him, appellant agreed to cooperate and gave officers information regarding his supplier. Subsequently, however, appellant ceased cooperating and he was then indicted and charged with the offenses as stated above.
 {¶ 17} After the state presented its case, appellant moved for acquittal of all charges pursuant to Crim.R. 29. With respect to the trafficking counts, appellant asserted that the state had failed to prove venue, that is, that appellant transferred cocaine to any individual in Wood County on February 25, March 18, or March 30, 2004. As to Count 4 of the indictment, appellant asserted that the state had failed to submit sufficient proof to establish a conspiracy to engage in a pattern of corrupt activity. The lower court granted the motion as to Count 4 of the indictment but denied it as to the remaining counts. Subsequently, the court found appellant guilty of all three trafficking charges. The court also found that the offenses had been committed in the vicinity of a school and so found appellant guilty of the specifications attached to each offense.
 {¶ 18} Prior to the sentencing hearing, appellant filed a motion to empanel a jury to hear and determine issues relevant to sentencing. The court denied the motion. Appellant also filed an affidavit of indigency in which he asserted that he had no income or assets which would enable him to pay a fine. On December 10, 2004, the case proceeded to a sentencing hearing. On each trafficking offense, the court sentenced appellant to a term of three years imprisonment. The court then ordered the terms to run consecutively, finding that consecutive sentencing was necessary to protect the public from future crime and that consecutive sentencing was not disproportionate to the seriousness of appellant's conduct and to the danger appellant posed to the public. The court then stated that in view of the harm caused by the multiple offenses, no single term adequately reflected the seriousness of appellant's offenses. The court further found that appellant's history of criminal conduct with respect to drug offenses demonstrated that consecutive sentences were necessary to protect the public from future crime. Finally, the court ordered appellant to pay fines of $10,000 on each of the three convictions, for a total fine of $30,000. Subsequently, appellant filed a motion for modification of the sentence. Appellant noted that he had filed an affidavit of indigency with the court on October 18, 2004, and asked the court to enter a nunc pro tunc judgment entry, deleting the $10,000 fines from the sentence. The court denied the motion.
 {¶ 19} In his first assignment of error, appellant asserts that the court erred in finding him guilty on Counts 2 and 3 of the indictment because the state failed to prove venue as to those counts. That is, appellant contends that the state failed to prove that appellant committed the offenses of trafficking in cocaine in Wood County on March 18 and 30, 2004.
 {¶ 20} Defendants have a right to be tried in the county in which the charged offense is alleged to have been committed. Section 10, Article I, Ohio Constitution and R.C. 2901.12. R.C.2901.12(H) further provides that if a defendant is alleged to have committed offenses in different jurisdictions as part of a course of criminal conduct, he may be tried in any of the jurisdictions in which one of the offenses or any element of an offense occurs. Unless waived, venue is a fact that must be proven in every criminal case even though it is not an element of the offense. State v. Draggo (1981), 65 Ohio St.2d 88, 90. The determination of whether venue is proper in a given county is to be determined from the elements of the offenses. Venue is proper if any element of the offense was committed in the county where the defendant was tried. R.C. 2901.12(G) and (H); State v.Headley (1983), 6 Ohio St.3d 475, paragraph one of the syllabus.
 {¶ 21} Appellant asserts that the evidence adduced with respect to Counts 2 and 3 of the indictment did not establish that he trafficked cocaine in Wood County. Rather, he admits that it only established that he trafficked cocaine in Delaware County. We disagree.
 {¶ 22} Appellant was charged with and convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(1), which provides that no person shall knowingly sell or offer to sell a controlled substance. A "sale" of a controlled substance includes, inter alia, the delivery, exchange, or transfer of the controlled substance "and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 3719.01(AA). The evidence presented at the trial below established that in November 2003, appellant and Ben Snyder agreed that appellant would supply Snyder with cocaine that Snyder would then sell in Northwest Ohio. Appellant, however, always fronted the cocaine to Snyder. Prior to the sales of March 18 and 30, a courier picked up the cocaine from appellant in Delaware County and brought it to Snyder in Wood County, after Snyder "ordered" specific amounts from appellant. Appellant therefore knew that the sales would be consummated in Wood County and, as such, the sales of March 18 and 30, 2004, were not complete until Snyder delivered the cocaine to the buyers. See State v. Harris, 6th Dist. No. F-04-005,2005-Ohio-1779, at ¶ 20; State v. Their (June 21, 1989), 1st Dist. No. C-880271. Because the "sale" of cocaine, as that term is defined by R.C. 3719.01(AA) and interpreted by the courts of this state, was completed in Wood County, Wood County was the proper venue for trying the March 18 and 30 trafficking offenses. The first assignment of error is therefore not well-taken.
 {¶ 23} In his second assignment of error, appellant asserts that the evidence was insufficient to find him guilty of Counts 2 and 3 of the indictment because the evidence did not establish that appellant had actual knowledge of the quantities of the drugs sold or the location of the sales.
 {¶ 24} With regard to Counts 2 and 3 of the indictment, appellant was found guilty of trafficking in cocaine in an amount in excess of 100 grams, but less than 500 hundred grams, in the vicinity of a school, on March 18 and 30, respectively, in violation of R.C. 2925.03(A)(1) and (C)(4)(e), each first degree felonies. That statute reads in pertinent part:
 {¶ 25} "(A) No person shall knowingly do any of the following:
 {¶ 26} "(1) Sell or offer to sell a controlled substance.
 {¶ 27} "* * *
 {¶ 28} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 29} "* * *
 {¶ 30} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
 {¶ 31} "* * *
 {¶ 32} "(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine * * * trafficking in cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the drug involved is within one of those ranges and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."
 {¶ 33} Appellant appears to be arguing that the culpable mental state of "knowingly" set forth in R.C. 2925.03(A)(1) also applies to the elements of the weight of the cocaine sold and that the sale was committed in the vicinity of a school. Looking at the express language of the statute, it is clear that the term "knowingly" only modifies the verbs "sell or offer to sell." SeeState v. Bowerman, 5th Dist. No. 2004CA00319, 2005-Ohio-6659, at ¶ 40; State v. Pulizzi (Jan. 15, 1997), 9th Dist. No. 17797;State v. Darby (Mar. 24, 1995), 11th Dist. No. 93-P-0117;State v. Laudato (Mar. 28, 1991), 8th Dist. No. 58211. Nothing in the statute requires that the offender have knowledge of the weight of the cocaine being sold. Pulizz, supra. Rather, because clauses in R.C. 2925.03(C)(4)(e) are discreet and there is no culpable mental state expressly attached to the weight of the cocaine element, the General Assembly intended to impose strict liability to that element of the offense. State v.Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, at ¶ 26, citingState v. Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, at ¶27-29.
 {¶ 34} Appellant further asserts that the state failed to prove that he "knowingly" sold cocaine within the vicinity of a school. "Vicinity of a school" is defined as being within "one thousand feet of the boundaries of any school premises." R.C.2925.01(P). The specification in R.C. 2925.03(C)(4)(e), elevates the offense from a second degree felony to a first degree felony and, thus, is an element of the crime which must be proven beyond a reasonable doubt. State v. Olvera (Oct. 15, 1999), 6th Dist. No. WM-98-022, quoting State v. Brown (1993),85 Ohio App.3d 716, 723.
 {¶ 35} In Lozier, supra at the syllabus, however, the Supreme Court of Ohio held that "[t]he culpable mental state of recklessness applies to the offense of trafficking in LSD `in the vicinity of a school' under R.C. 2925.03(C)(5)(b)." In reaching its holding, the court noted that because the statute failed to clearly indicate a purpose to impose strict liability, the "catchall" culpable mental state of recklessness applied to the element of "in the vicinity of a school." Id. at 163. See, also,State v. Greitzer, 11th Dist. No. 2003-P0-110, 2005-Ohio-4037
(applying Lozier to R.C. 2925.03(A) and (C)(4)(b)), and Statev. Stigall, 6th Dist. No. L-03-1348, 2006-Ohio-2483 (applyingLozier to R.C. 2925.03(A)(1) and (C)(4)(c)). The culpable mental state of "recklessness" is defined as: "when, with heedless indifference to the consequences, [a person] perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C.2901.22(C).
 {¶ 36} Appellant, however, does not argue that the state failed to prove recklessness. Rather, he asserts that the state failed to prove that he committed the sales in the vicinity of a school "knowingly." Knowingly is a higher mental state than recklessness. R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." As set forth above, the culpable mental state of "knowingly" only applied to the element of "sell or offer to sell."
 {¶ 37} Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 38} Appellant challenges his convictions for trafficking in cocaine in the vicinity of a school on March 18 and 30, 2004. The elements of those offenses are set forth above. In addition, R.C. 2923.03, regarding complicity, provides in relevant part:
 {¶ 39} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 40} "* * *
 {¶ 41} "(2) Aid or abet another in committing the offense;
 {¶ 42} "* * *
 {¶ 43} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 44} Appellant concedes there was sufficient evidence to convict him of trafficking in cocaine in the vicinity of a school in Wood County on February 25, 2004. Accordingly, appellant concedes that he recklessly disregarded a known risk that a school was nearby when he sold cocaine on that date. We have thoroughly reviewed the evidence submitted at the trial below and conclude that there was sufficient evidence from which a trier of fact could conclude that appellant sold cocaine on March 18 and 30, in the vicinity of a school. Although appellant was not physically present at the sales of March 18 and 30, he provided the cocaine for those transactions and the sales were consummated on those days. As we stated above, the sales on those dates were not complete until Snyder delivered the cocaine to the buyers. See Harris and Their, supra. Moreover, from the evidence submitted, and the reasonable inferences drawn therefrom, a rational trier of fact could conclude that appellant was aware that the cocaine was being stored at and sold out of the East Wooster Street home, which evidence revealed was 270 feet from an elementary and junior high school.
 {¶ 45} The second assignment of error is not well-taken.
 {¶ 46} In his third assignment of error, appellant challenges the consecutive nature of his sentences and asserts that the trial court erred in denying his motion to empanel a jury for purposes of sentencing.
 {¶ 47} Upon review, we find that this issue is controlled by the Supreme Court of Ohio's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the court held that R.C. 2929.14(E)(4) and 2929.41(A), the statutory sections under which courts impose consecutive sentences, violate theSixth Amendment to the United States Constitution, pursuant to Blakelyv. Washington (2004), 542 U.S. 296, and Apprendi v. New Jersey
(2000), 530 U.S. 466. Because the trial court relied on an unconstitutional statute when sentencing appellant, we find that the sentences are void and must be vacated. Foster, supra at ¶ 103-104. The third assignment of error is therefore well-taken.
 {¶ 48} Finally, in his fourth assignment of error, appellant asserts that the trial court erred in imposing upon him $30,000 in fines as part of his sentences for trafficking in cocaine when he had previously filed an affidavit of indigency.
 {¶ 49} R.C. 2925.03(D) mandates that a defendant who is convicted of a first degree felony trafficking offense, shall be ordered to pay a fine of no more than $20,000 and no less than $10,000, unless, as specified in R.C. 2929.18, the court determines that the defendant is indigent. Regarding the court's determination of indigency, R.C. 2929.18(B)(1) provides in relevant part: "If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender." Nevertheless, where an offender submits a timely affidavit of indigency, he "is not automatically entitled to a waiver of that fine." State v.Gipson (1998), 80 Ohio St.3d 626, 634. In Gipson, the Supreme Court of Ohio determined that the trial court did not abuse its discretion in refusing to waive the fine where the court placed the defendant on probation, the defendant was actively seeking employment at the time of the sentencing, the defendant retained and paid for a private attorney, and the defendant was an able-bodied young man with employment potential. In reviewing the case, the court noted that a trial court need not confine its evaluation to the defendant's status at the time of the sentencing. Rather, the court held that "a trial court's determination whether an offender is indigent and unable to pay a mandatory fine can (and should) encompass future ability to pay." Id. at 636. In reaching this conclusion, the court distinguished the Gipson case from cases in which offenders were sentenced to serve prison terms. However, the mere fact that an offender has been ordered to serve a prison term does not in and of itself require that a sentencing court find that a defendant is unable to pay a mandatory fine. "The burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." Id. at 635.
 {¶ 50} In State v. Sieng, 10th Dist. No. 04AP-556,2005-Ohio-1003, the defendant filed an affidavit of indigency but evidence presented at trial indicated that "although defendant worked in a restaurant or bar, at the time he was arrested he had $2,000 in cash in his pocket, wore several large pieces of gold and diamond jewelry, had diamonds in his teeth, and drove an expensive vehicle, all reflective of wealth." Id. at ¶ 45. In addition, the defendant would be only 35 at the end of his prison term and there was no evidence to indicate that he would be incapable of working to pay the fine upon his release from prison. In view of this evidence, the appellate court determined that the trial court did not abuse its discretion in imposing a $15,000 fine on the defendant.
 {¶ 51} In the present case, appellant timely filed an affidavit of indigency in which he asserted that he had no income or assets which would enable him to pay any fine. Nevertheless, the record revealed that in November 2003, he paid cash for a 1997 Buick Regal, subsequently fronted cocaine to Snyder and others, loaned money to others, and retained two attorneys to represent him in the proceedings below. Indeed, one of those attorneys continues to represent appellant before this court and was not appointed for that purpose. The state further asserts that at the time of his arrest, appellant rented a house for $800 a month and made over $7,000 from the three trafficking offenses of which he was convicted. There is, however, no evidence in the record to support those allegations. Regardless, given that this matter must be remanded for resentencing, the issue of whether appellant is indigent and will be unable to pay a fine in the future must be revisited by the trial court in light of the factors discussed above. State v. Cain, 3d Dist. No. 14-05-40,2006-Ohio-1779, at ¶ 7. The fourth assignment of error is therefore moot.
 {¶ 52} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. The sentence is hereby vacated and the case is remanded to the trial court for resentencing in accordance with this decision. The parties are ordered to pay equally the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Parish, J., concur.